JUNE.

THE PATAPSCO INSURANCE COMPANY *vs.* SMITH, *et al.*

*If a debtor gives his promissory note on account of a pre-existing simple contract debt, the note does not merge or extinguish such debt: but the creditor, on nonpayment of the note, may resort to the original contract*

*If a party at the time of contracting a debt, assigns the note of a third person to the vendor, such note does not extinguish the original contract, unless it was received as payment or satisfaction of such contract*

*A applies to B for insurance for himself, and others, on a cargo of goods, and the application is accepted by B, the policy executed, and A, with P his surety, give to B their promissory note for the payment of the premium. A, at the time he applied for insurance, did not disclose, nor was he requested to do so, who the persons were for whose benefit, as well as his own, the insurance was applied for; nor were the parties interested in the insurance known as such to B, until some time after the policy had been executed The note, when it became due, was not paid No notice was given to C and D, who were the other persons interested in the insurance, of the non-payment of the premium, until the day the note became due. Before that time C and D paid to A their respective proportions of the premium without the knowledge or privity of B. Held, in an action of assumpsit for the premium, brought by B against A, C and D, that the note given by A would not per se be sufficient to extinguish the simple contract debt, if under the circumstances of the case the law would imply a promise on their part to pay the premium to B. But as B was satisfied with the responsibility of A, and his surety, and did not intend to look to C and D, and as it was evident that the insurance was effected by A, as the agent of C and D, and not as co-partner, B could not recover the amount of the premium in such action*

APPEAL from *Baltimore* county court. The defendants in the court below, (now appellees,) were the owners of

the cargo of a brig called the *Ann*. The defendant, *Lyde Goodwin*, on behalf of himself and the other defendants, and by their authority, applied to the plaintiffs for insurance on said cargo on the 10th September 1816, by an application signed by himself singly, without particularizing the names of his partners in the cargo, and stating generally that he wanted insurance "for self and others." The plaintiffs thereupon executed a policy of insurance on the cargo, to amount of $30,000. For the premium payable for this insurance, *Goodwin*, together with *George P. Stevenson*, executed a joint promissory note to the plaintiffs. Several days after the execution of the policy and of the promissory note, *Goodwin*, by a memorandum at the foot of his application for insurance, declared that he agreed to said insurance for account of himself and the other defendants in this cause. The note was executed on the 10th September 1816, and was payable on the 13th of May 1817; but was not paid. Notice of the nonpayment was, on the day when it became due, given to the co-defendants and partners of *Goodwin*, and demand was then made upon them for the amount of the premium; but neither they nor *Goodwin* paid the note, or the premium. In the month of November 1816, the said partners of *Goodwin* paid to him their respective proportions of the premium, without the privity or knowledge of the plaintiffs. The plaintiffs demand, in this suit, from the defendants, the amount of said premium. On this statement of facts the county court gave judgment for the defendants, and the plaintiffs appealed to this court.

The cause was argued at June term 1822, before CHASE, Ch. J. BUCHANAN, EARLE, and STEPHEN, J. by *Winder* and *Mayer*, for the Appellants, and by *Raymond*, for the Appellees; and was re-argued at the present term before BUCHANAN, Ch. J. EARLE, MARTIN, and STEPHEN, J.

*Mayer*, for the Appellants, contended, 1. That whether *Goodwin* be considered as an agent or as a partner of his co-defendants, he and they were responsible as charged. 2. That the promissory note passed by *Goodwin* did not extinguish the responsibility of the co-defendants; and that the payment to *Goodwin*, by his co-defendants, of their respective proportions of the premium, had not exonerated them from their responsibility to the plaintiffs for the pre-

mium. On the *first point* he cited 2 *Leon.* 110. *Waring and others vs. Favench and others*, 1 *Campb.* 85. *Kymer and others vs. Suwercropp*, Ibid 110. *Patterson vs. Gandasequi*, 15 *East*, 68. On the *second point Schermerhorn vs. Loines*, 7 *Johns. Rep.* 311. *Holmes vs. D'Camp*, 1 *Johns. Rep.* 34. *Kearslake vs. Morgan*, 5 *T. R.* 513. *Puckford vs. Maxwell*, 6 *T. R.* 52. *Owenson vs. Morse*, 7 *T. R.* 60. *Stedman vs. Gooch*, 1 *Esp. Rep.* 5. *Tobey vs. Barber*, 5 *Johns. Rep.* 68. *Markle vs. Hatfield*, 2 *Johns. Rep.* 455. *Clark vs. Young*, 1 *Cranch*, 181.

*Raymond*, for the Appellees, contended that it was not alleged, either in the declaration, and did not appear in the case, that the defendants were partners, and that it could not be inferred that they were. That *Goodwin* was nothing more than an agent for the other defendants who had paid the premium to him, and were therefore discharged. He cited *Marsh. on Ins.* 292, 335, and the authorities there referred to. He also contended, that where the liability was different upon the note from what it was upon the original simple contract, the note was an extinguishment of the original contract; but that where the liability was the same upon the note as upon the original contract, the note was not an extinguishment of the contract. He referred to 2 *Bac. Ab.* tit. *Debt*, (G.) 290. *Kearslake vs. Morgan*, 5 *T. R.* 513, 518. *Holmes vs. D'Camp*, 1 *Johns. Rep.* 34. *George vs. Clagett*, 7 *T. R.* 355; and *Patterson vs. Gandasequi*, 15 *East*, 62.

STEPHEN, J. delivered the opinion of the court. This action of *assumpsit* was instituted in *Baltimore* county court, by *The Patapsco Insurance Company* against the defendants, to recover the sum of $1351 25, the premium stipulated to be paid for the insurance of the cargo of the *British* brig *Ann*, at and from *Buenos Ayres* to *Baltimore*. The application for insurance is in the following words: "*Lyde Goodwin* wants insurance for self and others on cargo pr. the *British* brig *Ann*, *Anderson*, master, at and from *Buenos Ayres* to *Baltimore*," &c. This application was accepted by the office, the policy executed, and on the same day *Goodwin*, with a certain *George P. Stevenson*, as his surety, (who was not in any manner interested in the subject matter of the insurance,) gave their negotiable promissory note for the payment of the premium of the

policy of insurance to the plaintiffs. Payment of this note, on its arrival at maturity, was legally demanded, and not being paid, a protest was made by a notary public, in the usual manner, for nonpayment. It is admitted, in the case stated, that no notice was given to the defendants of the nonpayment of the note, or any demand made on them by the plaintiffs for payment of the premium of insurance, until the day the note became due. That the defendants, before the above mentioned note became due, paid to *Goodwin* their respective proportions of the premium of insurance, without the knowledge or privity of the plaintiffs. That *Goodwin*, at the time he applied to the office for insurance, did not disclose the names of the owners of the cargo of the *Ann*, and that the parties interested in the insurance, or in other words the defendants, were not known as such to the insurers, until some time after the policy had been executed. On the nonpayment of the promissory note, given for the premium of insurance, this action was instituted to recover the same from the defendants, on the ground of an *assumpsit* legally implied to pay the same; and the question which this court is called upon to decide is, whether such a suit, under the particular circumstances of the case, can be sustained upon the established principles of law? In a state, at present highly respectable for its standing in a commercial point of view, and promising, by a gradual developement of its faculties, to make still further advances in that respect at no very distant day, questions relating to the laws of trade and commerce must at all times be deemed of the highest importance. It is therefore much to be desired, that in judicially deciding upon such principles, especially in the dernier resort, the utmost accuracy should be attained, and the doctrine of the law merchant settled upon the firmest and most stable foundation. The first question, to the consideration of which the mind is forcibly drawn in this case is, what was the effect of the note given by *Goodwin* and *Stevenson* upon any legal liability which might have attached upon the defendants in the absence of such note? The law is clear, that where a debtor gives his promissory note on account of a pre-existing simple contract debt, such note does not merge or extinguish the debt due on simple contract; but that the creditor, on nonpayment of the note, may resort to the original cause of action, and sue upon it.

1824.

Insurance Comp'y
vs
Smith

This doctrine is founded upon the principle, that both causes of action are of equal dignity in the eye of the law, and, therefore, in legal construction, the one does not merge or extinguish the other. This principle is too well settled to need the aid of authority to support it. Where a party, at the time of contracting a debt, assigns the note of a third person to the vendor, such note does not extinguish the original cause of action, unless it was received as payment or satisfaction of the original contract; to this effect see the case of *Clark vs. Young*, 1 *Cranch*, 181. The principle here established goes to prove, that a promissory note executed by the debtor and a third person at the time the debt is contracted, does not wholly extinguish the simple contract or original cause of action. In this case the note passed by *Goodwin* and *Stevenson* to the insurance company was a negotiable instrument, payable to order. If the note had been passed away or endorsed by the company, the law is clear, that no action could be sustained upon the primary cause of action; but it appears, from the case stated, that at the time the note became payable, it remained in the possession of the payees, and had not, at that time, been negotiated. In support of the doctrine here stated, *Harris vs. Johnston*, 3 *Cranch*, 311, and *Holmes vs. D'Camp*, 1 *Johns. Rep.* 34, are referred to. In the last of which cases the judge says, that "technically speaking a negotiable note is not an extinguishment of an antecedent debt, yet it has been deemed an extinguishment *sub modo*." He further goes on to remark, that where a negotiable note has been given for a prior debt, the plaintiff should not be suffered to recover on the original consideration, unless he shows the note to have been lost, or produces and cancels it at the trial. As before remarked, the fact in this case is admitted to be, (at least the contrary does not appear,) that the note remained in the possession of the party at the time it was due, and of course could not afterwards be negotiated, without subjecting the party receiving it to every defence which might be set off against the person to whom it was originally payable. From these principles, and the authorities referred to in support of them, it results that the note given by *Lyde Goodwin* and *George P. Stevenson* would not *per se* be sufficient to extinguish the simple contract debt, if under the circumstances of the case the law would imply a promise on the

part of the defendants to pay the premium of insurance to the plaintiffs. The question, however, still arises, did the law imply such promise? It is admitted, that at the time *Goodwin* applied for insurance his application was made for himself and others. He did not disclose at that time, nor was he requested to do so, who these persons were for whose benefit, as well as his own, the insurance was applied for. The insurers were therefore manifestly satisfied with the responsibility of *Goodwin* and *Stevenson*, and did not intend to look to the other defendants for payment. It is most evident that the insurance was effected by *Goodwin*, as their agent, and not as copartner; and it fully appears that he was so considered by the assured themselves, because, before the premium note became due, the defendants paid to *Goodwin*, their agent, their respective proportions of the premium. In *Patterson vs. Gandasequi*, 15 *East*, 62, the law is clearly settled to be, that if the vendor of goods, knowing that the buyer who deals with him in his own name is in truth the agent of another, elect to give the credit to the agent, he cannot afterwards recover the value against the principal; but if the principal be not known at the time of the purchase, when discovered, he or the agent may be sued at the election of the seller. It is true that the defendants in this case were not named to the plaintiffs, but sufficient was disclosed to the insurers to apprize them that the insurance was not for the benefit of *Goodwin* alone, but for himself and others, which was sufficient to put the insurers on inquiry, if they had not been satisfied with the liability of *Goodwin* and *Stevenson* alone. *Grose*, Justice, says, "I think that the plaintiffs in this case might have elected whom they would have for their debtor; and here they seem to have made their election." The court are therefore of opinion, that there is no error in the judgment of the court below.

JUDGMENT AFFIRMED.