### HARPER v. TAYLOR.

(Circuit Court of Appeals, Eighth Circuit. December 14, 1911.)

No. 3,287.

1. GUARDIAN AND WARD (§ 165*)—SUIT TO OPEN SETTLEMENT—BURDEN OF PROOF.

The burden of proof rests on a guardian to show that no unfair influence was exercised or advantage taken in a settlement made at or near the time when his ward came of age, in a suit to open such settlement.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 531–537; Dec. Dig. § 165.*]

2. APPEAL AND ERROR (§ 1009*)—REVIEW—FINDINGS OF FACT.

While the findings of fact of a chancellor are not conclusive on an appeal in equity, they are presumptively correct and persuasive, and unless an obvious error has occurred in the application of the law, or a serious mistake has been made in the consideration of the evidence, such findings will not be disturbed; and this rule is especially applicable where the evidence was taken orally in open court.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1009.*]

3. GUARDIAN AND WARD (§ 165*)—SUIT TO OPEN SETTLEMENT—SUFFICIENCY OF EVIDENCE.

Evidence considered, and held to fully sustain the findings of a trial court that a settlement between a guardian and ward, some two years after the latter reached her majority, which was approved by the probate court, was fair and free from fraud or deceit, and that there was no ground for opening the same at suit of the ward.

[Ed. Note.—For other cases, see Guardian and Ward, Dec. Dig. § 165.*]

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

Suit in equity by Florence A. Harper against Louis L. Taylor. Decree for defendant, and complainant appeals. Affirmed.

The appellant, complainant in the court below, seeks by her bill to have an accounting against the appellee, who was guardian of her estate, duly appointed

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the district court of Appanoose county, state of Iowa, a court of record, clothed by the laws of that state with jurisdiction in probate matters. For convenience, the appellant will be called herein the "complainant," and the appellee the "defendant."

The bill charges that when she became of age, which, under the laws of the state of Iowa, is at the age of 18 for females, she requested an accounting by the defendant as her guardian, who thereupon filed in the district court, in which the proceedings were pending, his final account as such guardian, to which she filed exceptions and at a later date additional objections, copies of which are made a part of the bill: that on October 19, 1906, when said exceptions and objections came up for hearing, she caused them to be withdrawn, in consequence, she charges, of false and fraudulent representations and statements made to her by the defendant and his agents, and the payment to her by him, as guardian, of the sum of $1,500 out of her funds in his hands; and thereupon she assented to an entry of a decree in said court that the balance due her from her guardian was $1,500, and that upon payment of said sum of money to complainant, and all court costs, which was in full settlement of all matters involved in the final report growing out of the relation of guardian and ward, he be finally discharged and his bond exonerated. This agreement was by the court approved, and thereupon a decree was entered by consent in accordance therewith. She further charges that her consent to this decree and the decree itself were procured by fraud, false statements, and representations, deceit, concealment, oppression, and advantage taken of her ignorance of material facts and her rights, made to and practiced upon her by the defendant and his attorney at and before the time of her assent to said decree. She then charges 17 different items which defendant had fraudulently charged her with in his settlement account, amounting in all to $12,966.21. She further alleges that she did not discover the fraud which had been practiced upon her by the defendant and his attorneys until some time during the year 1907 or 1908.

The prayer is the usual one in such cases for a discovery, a surcharge of the settlement account of the defendant as guardian, and for a decree for such sum of money as may be justly due her. The bill was filed June 29, 1908. To this bill defendant filed a plea in bar, setting up the decree of the Appanoose county district court hereinbefore mentioned; and further alleging that complainant was in attendance at the court in person and by attorneys and consented thereto with full knowledge of all the facts. The plea was accompanied with an answer, as required by the thirty-second equity rule, explicitly denying the fraud and oppression and the facts on which the charge is founded. A replication was filed by the complainant, and the cause set down for hearing on oral testimony to be produced in open court and such documentary evidence as might be tendered by the respective parties. A hearing was had by the court, the witnesses appearing and testifying orally, and thereupon the court found the issues in favor of the defendant; the finding being that: "Complainant had not been wronged in the slightest degree by defendant. And even if this was not so, she had a fair and full opportunity of having an investigation by a court of competent jurisdiction over the parties and the subject-matter, given every opportunity to know the true situation, having full and complete knowledge thereof, being then a mature woman; but acting partly on the advice of her husband and partly on the advice of her lawyer, Mr. Mabry, and acting on her own judgment, and desirous of concluding the case, she solemnly entered into the agreement and allowed the court to ratify it, the fruits of which were accepted, and at no time has she offered to place the defendant in the position that he was in before the decree was entered."

Upon these findings a decree dismissing the bill was entered, and this appeal is prosecuted for the purpose of reversing that decree.

Chester H. Krum, for appellant.

C. F. Howell (C. H. Elgin, on the brief), for appellee.

Before SANBORN and HOOK, Circuit Judges, and TRIEBER, District Judge.

193 F.—60

TRIEBER, District Judge (after stating the facts as above). [1] In the leading case of Hylton v. Hylton, 2 Ves. 547, Lord Hardwick said:

"Where a man acts as guardian, or trustee in the nature of a guardian, for an infant, the court is extremely watchful to prevent that person from taking any advantage immediately upon his ward coming of age and at the time of settling accounts or delivering up the trust, because undue advantage may be taken."

The same rule has been recognized and followed by the American courts. Adams v. Cowen, 177 U. S. 471, 20 Sup. Ct. 668, 44 L. Ed. 851, and authorities there cited; Eddy v. Eddy, 168 Fed. 590, 597, 93 C. C. A. 586; 2 Perry on Trusts, § 851; Van Rees v. Witzenburg, 112 Iowa, 30, 83 N. W. 787.

In view of the fact that, at the time this settlement was made and the consent decree entered, the complainant was not quite 20 years old, although she was then a mature woman, the burden of proof to show that no unfair influence was exercised by defendant, and that she was at the time fully advised of all her rights, was upon him. Has the defendant sustained this burden? The findings of fact made by the learned trial judge show that no unfair means were used or false representations made by defendant and that she had full and complete knowledge of all the facts and had the advice and counsel of her husband and attorney.

[2] While the findings of fact of a chancellor are not conclusive upon an appeal in equity, they are presumptively correct and persuasive, and unless an obvious error has occurred in the application of the law, or a serious mistake has been made in the consideration of the evidence, such findings will not be disturbed. This is the settled doctrine of this court. Thallman v. Thomas, 111 Fed. 277, 49 C. C. A. 317; Harrison v. Fite, 148 Fed. 781, 78 C. C. A. 447; Babcock v. De Mott, 160 Fed. 882, 88 C. C. A. 64. And this rule is especially applicable when the evidence was taken orally in the court and the chancellor had an opportunity to see the witnesses, observe their demeanor while testifying, judge of their candor and intelligence, and thus was able to determine more accurately their credibility and the weight to be given their testimony than an appellate court which must determine the facts from a printed record.

[3] A careful examination of the evidence can lead to no other conclusion than that reached by the learned trial judge. The fairness of the settlement between the parties has been established beyond question. The complainant, although not quite 20 years of age at that time, is shown to have been a bright young woman with considerable business experience, and had at that time, and for some time prior thereto, the assistance and advice of able counsel, and also that of her husband, who is an attorney. It seems that she had quite a number of lawyers engaged prior to and up to the time of this settlement. Among her attorneys it appears were Messrs. H. Scott Howell & Son of Keokuk, Iowa, T. G. Fee of Centerville, Iowa, Milcrist & Scott of Sioux City, Iowa, and J. C. Mabry of Albia, Iowa. In this connection it is proper to state that Mr. C. F. Howell who is

counsel for defendant in this proceeding has no connection whatever with Messrs. H. Scott Howell & Son, and is not related to them.

From the evidence it appears conclusively that the proposition for settlement came from the complainant; that propositions and counter propositions were made until finally complainant's counsel, by her direction, proposed to the defendant to accept $1,500 as a settlement in full; that defendant refused to pay that sum, when complainant requested a personal interview with the defendant and persuaded him to consent to paying that sum; that during all these negotiations complainant was present, advising with her counsel, and when the settlement had been approved by the court and the decree entered, expressed herself as well pleased with the result. Mr. Mabry, who was the complainant's attorney who concluded the settlement, and whose integrity is beyond question, stated in his testimony:

"The negotiations were carried on not only between himself and the firm of Howell & Elgin, but Mrs. Harper took quite an active part in that herself. She was always present, or practically always, when negotiations were going on. I can't recall now that I had negotiations aside from her or out of her presence. I had gone over the items of the exceptions in detail with Mrs. Harper, not only once but often, and discussed the chances fully as to a recovery on each item. Mrs. Harper was quite accurate and rapid in figuring up and appeared very intelligent in the matter of going through the reports. I found her of a great deal of assistance in ascertaining the true conditions as involved in the report extending over a number of years, and would spend hours at a time going over this report in detail and discussing in detail what evidence we had or would be required on each item and the chances for and against on each item. Mrs. Harper was exceedingly anxious to get through with it. There was another feature in the case that gave me considerable difficulty, and one on which I entertained considerable doubt, and I explained that to Mrs. Harper, and that was a question that had been raised in connection with the matter in behalf of Mrs. Harper's mother as to the bequest under her grandfather's will to her brother who had died without other issue than his mother, and the question raised was whether or not it was an absolute bequest in the concluding paragraph of the will. I examined the authorities carefully and called Mrs. Harper's attention to them. I did not expect her to look at them from the standpoint of a lawyer, but simply to show that there was a somewhat serious question in the case as I viewed the language of the will. If that were correct, then a great deal of this money in dispute would have gone to her mother as the only heir of her deceased son who died without issue."

Other witnesses testified to the same effect.

In addition to the testimony of these witnesses, it also appeared in evidence that in 1907, a year after this settlement had been made, the complainant, at her home in Boston, Mass., had an answer prepared to be filed in another proceeding pending in the courts of Iowa wherein she was sued by one of her attorneys for his fee. This answer was prepared by an attorney in Boston who obtained the facts solely from the complainant. In this answer she set up as a defense that the said attorneys, H. Scott Howell & Son, had not properly protected her interests in the proceedings concerning the settlement of her guardian, and for that reason she had to employ other attorneys; that after employing such other attorneys she found that there were many other objections to the final report of her guardian than those filed by H. Scott Howell & Son, and by reason of filing these additional objections she obtained $1,500 from her guardian.

Another important fact to be considered in connection with the other evidence is that, although the bill charges that she did not discover the fraud which had been practiced upon her by the defendant or his attorneys until some time during the year 1907 or 1908, there was not a scintilla of evidence to sustain this allegation. Nor was there any evidence which cast the least reflection upon the integrity of any of the counsel employed by complainant in her controversy relating to the settlement or the attorneys of the defendant.

The evidence showing that the settlement between complainant and defendant was fair, that no fraud or deceit had been practiced upon her by the defendant or his attorneys, and that she had full knowledge of all the facts and expressed her satisfaction therewith after the decree had been entered, is practically conclusive.

In view of the conclusions reached, it is unnecessary for the court to determine whether she was guilty of laches, or whether her action is barred by the statute of limitations of the state of Iowa, as claimed by counsel for defendant.

The decree of the Circuit Court was right and is therefore affirmed.