### WELD v. McKAY et al.

(Circuit Court of Appeals, Seventh Circuit. November 6, 1914.)

No. 2133.

1. APPEAL AND ERROR (§ 1009*)—REVIEW—FINDINGS.

The rule that the chancellor's findings will be presumed correct, unless the record shows plain error in considering the evidence, or in applying the law, resulting in manifest injustice, is applicable, though the pertinent issue of fact has been determined solely on the testimony of a single interested witness.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970–3978; Dec. Dig. § 1009.*]

2. BANKRUPTCY (§ 175*)—PROPERTY OF BANKRUPT—TRANSFER TO WIFE—PREFERENCES.

Except as prohibited by Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (Comp. St. 1913, § 9585 et seq.), a husband may prefer his wife as a creditor, in the absence of actual or constructive fraud, to which she is a party; and, while such transactions are subject to the keenest scrutiny, they are not ipso facto illegal.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248; Dec. Dig. § 175.*]

3. BANKRUPTCY (§ 182*)—TRANSFER BY HUSBAND TO WIFE—FRAUD—PRESUMPTION.

The presumption arising against the good faith of a conveyance made by a failing husband to his wife is merely a presumption of fact, there being no presumption of law against the validity of such transfer, which will stand if the bona fide character of the transfer is shown by clear and convincing proof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 255–258; Dec. Dig. § 182.*]

4. BANKRUPTCY (§ 303*)—CONVEYANCE BY HUSBAND TO WIFE—BONA FIDES—PROOF.

The bona fide character of a conveyance by a failing husband to his wife may be established by the uncorroborated testimony of the husband or wife.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. BANKRUPTCY (§ 181*)—TRANSFER BY HUSBAND TO WIFE—CHARACTER OF IN-STRUMENT—DEED AS MORTGAGE.

A finding that a transfer by a failing husband to his wife to secure his indebtedness to her, though absolute in form, was in fact a mortgage, did not establish that it was fraudulent and illegal as against creditors, where she did not attempt to hold the property or its value, irrespective of the amount of her husband's debt justly due to her.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 271, 273, 274; Dec. Dig. § 181.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Creditor's bill by William Weld, administrator with the will annexed of the estate of Theodore B. Casey, deceased, against James R. McKay, individually and as trustee under the will of Elizabeth M. McKay, deceased, James M. McKay, individually and as trustee under the will of Elizabeth M. McKay, deceased, and others. Decree for defendants and complainant appeals. Affirmed.

William D. Elliott, of Rochester, N. Y., and William E. Lamb, of Chicago, Ill., for appellant.

Nathan G. Moore of Chicago, Ill., for appellees.

Before SEAMAN and KOHLSAAT, Circuit Judges, and CARPENTER, District Judge.

PER CURIAM. Appellant filed a creditor's bill, based upon a judgment for $62,500, to recover certain lands from the estate of the wife of one of the judgment debtors. The decree denied the prayer of the bill. The chancellor found the material facts as follows:

That on June 17, 1903, said James R. McKay owned lots 12, 13, and 14, and the north one-half of lot 15, in block 51, in Elston's addition to Chicago, situated on Goose Island, Chicago, and on that date conveyed said property, the only consideration therefor being the indebtedness mentioned below, to his wife, Elizabeth M. McKay, by mesne conveyance through Frederick T. Hoyt, subject to a mortgage of $7,500.

That prior to the time of said conveyance said Elizabeth M. McKay had loaned money to her husband, James R. McKay, on several occasions, as follows: On February 21, 1895, she mortgaged certain property owned by her at 27 East Ohio street, Chicago, and occupied by herself and her husband as a homestead, for the sum of $10,000, and turned the money over to her husband; on January 24, 1902, she paid off $2,500 of the principal of said mortgage; and on February 1, 1902, she paid off $2,500 of the principal of a $10,000 mortgage indebtedness of her husband's, secured by a mortgage on his aforesaid Goose Island property. Out of said transaction an indebtedness arose from said James R. McKay to his wife, which on June 17, 1903, was a valid and subsisting indebtedness for the principal sum of $12,500, with interest as hereinafter provided, which it was understood between them, at the time of said transactions, was to be paid out of the proceeds of said property.

That said James R. McKay made said conveyance in view of his liability on said Chapin Brokerage Company contract, and because of it, and said conveyance left said James R. McKay insolvent and unable to pay the whole, or any substantial part, of his indebtedness to said Theodore B. Casey.

That said conveyance was not made or accepted as a present satisfaction of the aforesaid indebtedness, and after the conveyance of said property said James R. McKay kept up all interest payments on the $7,500 mortgage

on said property, and also on the $7,500 mortgage on his wife's Ohio street property, until the death of his wife in May, 1905, but all taxes on said premises after said conveyance were paid by said grantee.

That said conveyance was made to protect and secure his wife for the aforesaid indebtedness, with the intention that as soon as said property was sold the proceeds should be applied in satisfaction of said indebtedness. That said conveyance was a lawful preference given to Mrs. McKay as a legal creditor of her husband, and was not illegal, fraudulent, or void as to the complainant, as alleged in the bill of complaint; but complainant is entitled to the surplus proceeds of said property, if any, over and above the amount required to reimburse the estate of Mrs. McKay the principal of said advances by her, the charge created by her on her own property for his benefit, as herein stated, all subsequent carrying charges, with interest thereon, and interest on such advances and payments, the amount thereof to be determined upon an accounting as hereinafter provided.

[1] The facts found by the chancellor will be presumed correct, unless the record shows an egregious blunder in the consideration of the evidence, or an error in the application of the law, resulting in manifest injustice. Beamer v. Werner, 159 Fed. 99, 86 C. C. A. 289; Harper v. Taylor, 193 Fed. 944, 113 C. C. A. 572.

The pertinent issue of fact was determined solely upon the testimony of James R. McKay, and counsel urges that the foregoing rule applies only where there is a conflict in the evidence. This is not so. The evidentiary facts may all be made known from the mouth of a single witness, and yet the ultimate fact as determined by the chancellor is just as persuasive as if the evidentiary facts had come from many witnesses.

[2] It is also urged that (conceding this court will not disturb the findings of fact of the trial court) a question of law is involved; that under the law of Illinois there is a presumption of law against the validity of conveyances from husband to wife, where the husband is in failing circumstances. Here, too, counsel are in error. It is lawful, in Illinois and elsewhere (save as prohibited by the Bankruptcy Law), for a failing debtor to prefer one or more of his creditors to the exclusion of the others. It is also lawful for a husband to prefer his wife as a creditor, in the absence of fraud, actual or constructive, to which she is a party. Such transactions, it is true are subject to the keenest scrutiny; but they are not ipso facto illegal.

[3] There is, perhaps, a presumption against the bona fides of a conveyance made by a failing husband to his wife; but it is merely a presumption of fact, negativing the idea of a valid consideration, and the burden is upon the wife to support her right by clear and convincing proof. But, that done, the transaction is purged of all corruption. There is no presumption of law against the validity of such a transfer which will stand against established facts to the contrary.

[4] Moreover, the facts may be shown by the uncorroborated testimony of the husband or wife. Otherwise, in such cases they would be incompetent witnesses. There is no statute or principle of law which prevents them from testifying.

At the trial evidence was offered tending to prove a valid consideration for the transfer which was attacked, and nothing to the contrary.

[5] The finding that the transfer, though absolute in form, was a

mortgage, does not stamp it as fraudulent and illegal as against creditors. Such is never the case, save possibly where the grantee, with knowledge of that fact, attempts to hold the property to its full value, irrespective of the amount of the debt justly due.

Only questions of fact are presented by the assignment of errors in this case, and no error appearing in the application of the law, and no serious mistake appearing to have been made in the consideration of the evidence, the finding of the chancellor will not be disturbed.

The decree must be affirmed, with costs against the appellant; and it is so ordered.